## SARAH E. MITCHELL *vs.* HENRY S. MITCHELL.

In an action of trespass for *mesne profits*, evidence of the net profits made by the owner of an adjoining farm is *not admissible* for the purpose of showing what was made upon the land for the profits of which the suit was brought.

In this case the decision of the court below, that in an action of trespass for *mesne profits*, the plea of limitations bars a recovery beyond three years prior to the suit, was *affirmed by a divided court.*

A prayer, that the defendant cannot deduct the taxes paid by him, *"out of the profits"* for the years for which they were assessed, until he has been charged *"with the profits of the previous years"* barred by limitations, is erroneous in *assuming* the existence of profits during the years barred by limitations.

APPEAL from the Circuit Court for Charles county.

*Trespass* for *mesne profits,* brought by the appellant against appellee, on the 11th of February 1854, after a recovery in ejectment. The declaration claims the profits of the tract of land called *"Myrtle Grove,"* from the 1st of January 1842, till the commencement of the suit. Pleas:—1st, *non cul.;* 2nd, *non cul. infra tres annos;* and 3rd, *actio non accrevit infra tres annos.* Upon which issues were joined.

*1st Exception.* The plaintiff proved, that the defendant took possession of "Myrtle Grove" some time in the year 1841, and remained in possession thereof up to the time of trial, and then read in evidence the record in the ejectment case, showing her recovery of the land by a judgment of the circuit court in 1853, which was affirmed by the Court of Appeals in 1854, and in offering this record, disclaimed demand in this suit for rents and profits anterior to the 1st of May 1846, the date of

the demise in the ejectment suit. She then proved, that the probable annual value of the land was from $450 to $550, from the 1st of May 1846, and further to show the annual profits which she might have made out of the lands, and had been deprived of from that date, offered to prove by John W. Jenkins, who owned the adjoining farm, containing less than 800 acres, while Myrtle Grove contained nearly 900, the amount of net profits made by the witness out of his farm during the three years next preceding this suit, but the court (CRAIN J.) rejected this evidence, and to this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff then read in evidence a bill in chancery, filed by her against the defendant, and his answer thereto filed in May 1847. (The allegations of this bill and answer need not be here stated. The history of the litigation between these parties in regard to this land will be found in the cases reported in 2 *Gill*, 230. 8 *Gill*, 98. 1 *Md. Rep.*, 44, and 6 *Md. Rep.*, 224.) The defendant then proved the sums which he had paid for State and county taxes upon this property for the years 1851, 1852 and 1853, and then prayed the court to instruct the jury, "that if they find the facts in the aforegoing bill of exceptions to be true, then under the pleadings in this case the plaintiff is only entitled to recover damages by way of *mesne profits* for three years prior to the institution of the suit in this case." This prayer the court granted, and the plaintiff excepted.

*3rd Exception.* The plaintiff then prayed, the court to instruct the jury, "that the defendant cannot claim to deduct the taxes given in evidence by him, out of the profits of the lands chargeable against him for the years for which said taxes were assessed as aforesaid, until the said defendant has been charged with the profits of the previous years, for which no recovery can be had in this action under the statute of limitations." The court refused to grant this prayer, and the plaintiff excepted, and from the verdict and judgment in her favor giving her a less sum than she claimed, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Charles E. Phelps* and *Robt. J. Brent* for the appellant, argued:

1st. The first exception raises the question whether as against a trespasser, who furnishes no account of the profits made by him out of the plaintiff's land, the plaintiff cannot show the annual net profits made during the same years by the adjacent farm, which contained a less number of acres. It will be observed, that the proof proposed, did not exclude the defendant from proving by cross-examination or otherwise the superior excellence of the adjacent farm. It was held by Harford county court, that in assessing damages for the condemnation of land for the use of a corporation the jury may and ought to inquire into the value, of not only adjacent lands but of lands in the neighborhood. *9 G. & J., 521, Tide Water Canal Co. vs. Archer.* See also, *1 H. & J., 576, West vs. Hughes. 1 Smith's Lead Cases, 399.*

2nd. As to the question of limitations. The facts of this case show a *tortious* withholding of possession for a long series of years, in defiance of a solemn decision of the Court of Appeals, made in a cause wherein this defendant was a party, and of the most earnest and repeated efforts to recover our lands by every form of legal proceeding known to our jurisprudence. Besides this, the plaintiff having made an actual entry on the lands, brought an action to recover the back profits, while some of her ejectment suits were pending, but lost it on the ground, that she had no cause of action for *mesne profits* until she had first recovered the land in ejectment. *1 Md. Rep., 44, Mitchell vs. Mitchell.* The question is not whether the plea of limitations lies to the action of trespass for *mesne profits*, but simply as to the time when the statute begins to run. The rule of the common law is, that in actions of *tort* where the cause of action arises by reason of subsequent special damages, or from any consequential matter, the statute does not attach until the consequential matter arises. *2 Greenlf. on Ev. sec., 433.* If, therefore, the action for *mesne profits* is consequential to the recovery in ejectment, as ruled by this court, it must follow, that the cause of action does not arise until a recovery. But our statute of limitations, of 1715,

ch. 23, sec. 2, requires all actions of *trespass quare clausum fregit* (and this is one of them) to be brought within three years *ensuing the cause of* such action. The third plea of the defendant is therefore the only available plea in the case. The question then is, when did the cause of action accrue? It is now the settled law of this State, that in a case like this the action cannot be maintained except as consequential to a recovery in ejectment. How then can the plea which asserts, that the cause of action accrued before the judgment in ejectment, be maintained in the face of a decision which denies all previous right of action to the plaintiff? The question, wholly distinct from any heretofore ruled in this State now arises, whether there is *any legal redress* to a plaintiff for the *mesne profits* received by a defendant *anterior to the final recovery of the land?* If this is the law, then you not only decide that there is a *right without a remedy,* but actually hold out a *premium* to every defendant in ejectment to protract his groundless opposition to a lawful suit by rewarding him with the *absolute title* to all the *mesne profits* he can realise more than three years before the final judgment in ejectment. There could be no other legal remedy, because no *damages* for such profits can be assessed in the ejectment suit. 3 *H. & McH.,* 96, *Gore's Lessee vs. Worthington.* In North Carolina, where the principle ruled by this court, that trespass for *mesne profits* can only be maintained after a recovery in ejectment prevails, the courts have consistently held, that limitations could only run from the recovery of the lands and therefore all *mesne profits* from the date of the demise in the ejectment suit were recoverable against the plea of limitations. 2 *Murphy,* 238, *Murphy vs. Guion.* See also, *Bul. N. P.,* 88. But whatever may be the conflicting decisions in other States, the only safe guide in Maryland, is found in the language of our statute of limitations, which requires the suit to be brought, "within three years *next ensuing the cause of action.*" To prevent injustice, and punish the wrong-doer, instead of rewarding him, the law must hold consistently, that the plaintiff had no cause of action subject to the operation of the statute of limitations until he was in a condition to sue for back rents. Is it

not absurd to say now that this plaintiff had a cause of action subject to limitations, at the very time when this court say that her right of action had not accrued? If the court now decides, that our cause of action accrued so as to bar us from all *mesne profits* arising more than three years before this suit, they virtually decide that the cause of action existed anterior to the judgment in ejectment. If she had brought her action of trespass after the defendant's first entry, her damages would not have included his subsequent use and occupation of the premises, which it is the peculiar object of this action to recover. 1 *H. & J.*, 403, *Gill vs. Cole.* The question is simply, when could the plaintiff have sued for the use and occupation of her lands by this trespasser? The moment she could sue, her cause of action was complete, and that was only in 1853, after the recovery in the county court in the ejectment case, and therefore, the defence of limitations falls *in toto*, and she is entitled on principle and every consideration of justice, to recover damages during the *whole time* this continuous wrong was being perpetrated.

3rd. The third exception presents the question whether the defendant could credit himself with the taxes paid for the three years, during which he was held liable under his plea of limitations without first charging himself with the profits of those years barred by limitations. It was expressly held in *Ewalt vs. Gray*, 6 *Watts*, 428, that the taxes must be credited against the rents and profits which the plaintiff is barred from recovering.

*J. M. S. Causin* and *Wm. Schley* for the appellee, argued:

1st. That the rejection of the evidence stated in the first bill of exceptions was clearly right. It was offered to show "the annual profits which the *plaintiff* might have made," &c. *Non constat*, the *plaintiff* would have made on the farm of Mr. Jenkins as much as he made, or that *he* would have.made on "*Myrtle Grove*" as much as he made on his own farm; much less would it follow that the plaintiff would have made on "*Myrtle Grove*" as much as Mr. Jenkins would have made on *his farm.* But having resorted to proof of the annual

*value* of the land, she cannot resort to any other mode of showing the *profits*. 1 *H. & J.*, 576, *West vs. Hughes.* Again, the *offer* was to show what Mr. Jenkins had made within *three years* next preceding the suit, and yet the *object* of the proof was to show what might have been made during a period of *seven years* before the institution of the suit.

2nd. The statute of limitations is a bar to the recovery of the *mesne profits,* as in other cases of trespass. There is no exception in favor of the action of *trespass* for *mesne profits.* It is clearly embraced by the words of the statute, and even *femes covert*, infants and lunatics, unless they had been excepted from its operation, would have been barred. 1 *Cowen,* 357, *Sacia vs. De Graaf; 1 H. & G.,* 215, *Oliver vs. Gray; Angell on Lim.,* 205, *sec.* 3; 5 *Md. Rep.,* 517, *Collins vs. Carman,* citing with approbation 3 *Johns. Ch. Rep.,* 138, *Demarest vs. Wynkoop; Plowden,* 369, *(b,)* 371, *(b,) Stowell vs. Zouch,* and 1 *Smith's Lead. Cases,* 531.

It is true that an action of trespass for *mesne profits* cannot be maintained in this State before a recovery in ejectment. 1 *Md. Rep.,* 55, *Mitchell vs. Mitchell.* The reason is technical. *Possession* in this, as in other actions of trespass, is essential to a recovery. Now, pending the term of the demise in the ejectment, the *present* plaintiff was not technically in possession, because of the subsisting *lease*, nor was the fictitious lessee in possession, as the *very action* is based upon the notion of an *ouster* antecedent to the institution of the ejectment suit. Therefore any trespass upon the plaintiff's *possession* during the term of the demise is simply technically impossible. But the plaintiff is not, therefore, *without remedy.* The pendency of the ejectment does not prevent a recovery of damages in the *common action* of *trespass q. c. f.* for the value of the profits prior to the action in ejectment, and for this plain reason, that such recovery is not inconsistent with the notion of a *subsequent demise* by the plaintiff and a *subsequent* actual *possession* by the defendant; whereas to sustain trespass for a period *subsequent* to the actual ouster of the plaintiff, would be to exclude the element of *possession* from the notion of a real trespass. The *right* of the plaintiff to damages existed all the while, as

the result of the ejectment suit showed, but this *particular remedy* could not be pursued, because it is merely *consequential*. But the plaintiff is not bound to *adopt* this particular form of action. Other remedies were open to her pending the ejectment and since it was determined. She might have brought the two actions of ejectment and trespass *q. c. f.* in the *common form* for damages, under which she could have recovered *all the damages consequential* to the trespass. The forms of action in trespass *q. c. f.* and trespass for *mesne profits* are different. In the latter the plaintiff goes for *rents and profits eo nomine;* in the former for damages *resulting from the trespass.* 1 *Ev. Harris,* 520. The *former* comprehends the *latter,* and the latter does not *bar* the former. 1 *H. & J.,* 403, *Gill vs. Cole.* That consequential damages are recoverable in the common action of *trespass,* see 13 *How.,* 363, *Day vs. Woodworth. Ibid.,* 447, *McAfee vs. Craofford.* 10 *Coke,* 115, *Pilfold's case.* And as to who can maintain such an action, see 3 *H. & McH.,* 396, *Chapline vs. Harvey.* 1 *H. & J.,* 295, *Norwood vs. Shipley.* 2 *Do.,* 444, *Tomlinson vs. Rizer.*

But even if there were *no other remedy*, pending the action of ejectment or since, either at law or in equity, it does not thence follow that the statute of limitations is to be considered as excluded by any peculiar equity. No case has been found by us which makes this action an exception, and many cases show that the act *does embrace it. Bul. N. P.,* 88. *Angel on Lim.,* 223, sec. 4, 329, sec. 10. *Adams on Eject.,* 333. *Peake's Ev.,* 539. 2 *Saunder's Pl. & Ev.,* 668, 669. *Brown on Actions at Law,* 67, 478, 479. *Roscoe on Real Actions,* 707. 1 *Selw. N. P.,* 625. 2 *Stephen's N. P.,* 1493. 1 *Atk.,* 525, *Norton vs. Frecker.* 3 *Yeates,* 14, *Hare vs. Fury.* 2 *Wend.,* 294, *Jackson vs. Varick.* 8 *Do.,* 587, *Morgan vs. Varick.* 4 *Whart.,* 240, *Dawson vs. M'Gill.* 4 *Pet.,* 480, *Society, &c., vs. The Town of Pawlet.* 9 *How.,* 529, *Bank of the State of Alabama vs. Dalton.* But again, the plaintiff *has joined issue* upon this plea. If by relation the defendant was a trespasser during *all the time* since May 1846, then the cause of action accrued during the whole time,

and, of course, as to the trespasses which occurred more *than three years* prior to the suit the *issue* ought to have been found for the *plaintiff*. This joining of issue is an admission, *by pleading* that the *statute is a bar;* the *legal sufficiency* and *applicability* of the plea is admitted. 1 *G. & J.,* 324, *Danels vs. Taggart's Adm'r.* 9 *Do.,* 457, *Union Bank vs. Planters Bank.* 10 *Do.,* 355, *Planters Bank vs. Bank of Alexandria.* 3 *Do.,* 393, *Green vs. Johnson & Wife.* 9 *Gill,* 77, *Mitchell vs. Williamson.*

3rd. That the ruling of the court in the third exception was also correct. It is the privilege of the debtor to *apply* the payment, (11 *G. & J.,* 212, *Beltzhoover vs. Yewell,*) and the defendant was bound to pay the taxes.

MASON, J., delivered the opinion of this court.

The plaintiff, to show the annual profits of the land, offered to prove by Mr. Jenkins, who lived upon the adjoining farm, the amount of net profits which his farm yielded. This testimony was objected to, and rejected by the court, and this forms the first exception. This testimony, a majority of the court are of opinion, was properly refused for the reason assigned, upon an analogous point, by this court, in the case of *Keedy vs. Newcomer,* 1 *Md. Rep.,* 251, namely, "that it is no very unusual thing, that thriving and industrious farmers find themselves neighbors to those who are not so distinguished for those qualities," and hence what one man might make upon his farm, would be no criterion as to what his neighbor has made, even conceding the quantity and quality of the land of each to be equal, which is by no means universally true.

Upon the question of limitations the court is equally divided, and therefore the judgment of the court below must be affirmed upon the second exception.

The proposition submitted by the plaintiff's counsel in the third exception, namely, to make the taxes, &c., a charge upon the profits of the years excluded by limitations from the recovery, was doubtless intended to be a recognition of the principle asserted in the case of *Ewalt vs. Gray,* 6 *Watts,* 427. We think, under the decisions of this court, the circuit court

31    v.10

could not have done otherwise than reject the prayer; for conceding the principle announced in it to be correct, yet it was defective in *assuming* the existence of profits during the years barred by limitations. The finding of the fact, whether or not there were profits, should have been left to the jury. Upon this point see the cases of *Crawford vs. Berry*, 6 *G. & J.*, 63; *Balt. & Susq. R. R. Co. vs. Woodruff*, 4 *Md. Rep.*, 242; *Boyd vs. McCann, Ante,* 118; and other cases.

*Judgment affirmed.*